LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
ROBERT K. SHELQUIST
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
       rkshelquist@locklaw.com

Attorneys for Plaintiffs
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Ludmila Gulkarov, Janine Torrence, Kelly McKeon, and Josh Crawford, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Plum, PBC, and Plum, Inc., Delaware corporations, <br><br> Defendants. | Case No. 21-cv-00913-YGR <br><br> **CONSOLIDATED CLASS ACTION COMPLAINT FOR:** <br><br> (1) NEGLIGENT MISREPRESENTATION; (2) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT; (3) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW; (4) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW; (5) BREACH OF EXPRESS WARRANTY; (6) BREACH OF IMPLIED WARRANTY; (7) VIOLATIONS OF NEW YORK'S DECEPTIVE PRACTICES ACT; (8) VIOLATION OF MINNESOTA UNLAWFUL TRADE PRACTICES ACT; (9) VIOLATION OF MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT; (10) VIOLATION OF MINNESOTA FALSE STATEMENT IN ADVERTISING ACT; (11) VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT; (12) VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW; (13) UNJUST ENRICHMENT; (14) FRAUDULENT MISREPRESENTATION; AND (15) FRAUD BY OMISSION. <br><br> **DEMAND FOR JURY TRIAL** |

1.     Plaintiffs Ludmila Gulkarov, Janine Torrence, Kelly McKeon, and Josh Crawford (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this Class Action Complaint against Defendant Plum, PBC and Defendant Plum, Inc. (collectively "Defendants"), for their negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the presence of arsenic, cadmium, lead, or mercury (collectively "Heavy Metals") and/or perchlorate or other undesirable toxins or contaminants in their baby food that do not conform to the products' labels, packaging, advertising, and statements that are sold throughout the United States.   Plaintiffs seek both injunctive and monetary relief on behalf of the proposed Class (as defined herein), including requiring full disclosure of all such substances in their marketing, advertising, and labeling and restoring monies to the members of the proposed Class.  Plaintiffs allege the following based upon personal knowledge as well as investigation by their counsel, and as to all other matters, upon information and belief (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery).

## NATURE OF THE ACTION

2.     Parents like Plaintiffs trust manufacturers like Defendants to sell baby food that is healthy, nutritious, and free from harmful toxins, contaminants, and chemicals. They certainly expect the food they feed their infants and toddlers to be free from Heavy Metals or perchlorate, substances known to have significant and dangerous health consequences.

3.     Consumers lack the scientific knowledge necessary to determine whether the Defendants' products do in fact contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants, or to ascertain the true nature of the ingredients and quality of the products. Reasonable consumers therefore must and do rely on Defendants to honestly report what their products contain.

4.     Defendants manufacture, market, advertise, label, distribute, and sell baby food products under the brand name Plum Organics throughout the United States, including in this District.

CONSOLIDATED CLASS ACTION COMPLAINT

5.     Defendants state they use "organic, non-GMO, whole and simple ingredients" and their products are "always made without genetically modified ingredients."[1]  Defendants' mission is "to nourish little ones with the very best food from the very first bite."[2]

6.     Defendants' packaging and labels emphasize the inclusion of quality and safe ingredients, their commitment to organic food, the absence of any unnatural ingredients, and the safety of their products for human infant consumption.

7.     Yet nowhere on the labeling, advertising, statements, warranties, and/or packaging do Defendants disclose that the Baby Foods[3] include Heavy Metals, perchlorate, or other ingredients that do not conform to the labels, packaging, advertising, and statements.

8.     Indeed, the Baby Foods have been shown to contain significant levels of arsenic, cadmium, lead, mercury, and/or perchlorate- all known to pose health risks to humans, and particularly to infants.[4]

9.     Despite this, Defendants warrant, promise, represent, mislead, label, and/or advertise that the Baby Foods are free of any Heavy Metals, perchlorate, and/or unnatural ingredients by making assurances that the foods are high quality and safe for infant consumption.

[1] https://www.plumorganics.com/food-philosophy/ (last accessed March 9, 2021).

[2] https://www.plumorganics.com/faqs/ (last accessed March 10, 2021).

[3] The phrase "Baby Foods" collectively refers to the following Plum Organics products: Just Sweet Potato Organic Baby Food; Just Peaches Organic Baby Food; Just Prunes Organic Baby Food; Apple & Carrot Organic Baby Food; Apple, Raisin, & Quinoa Organic Baby Food; Pumpkin, Banana, Papaya, & Cardamom Organic Baby Food; Pear, Purple Carrot, & Blueberry Organic Baby Food; Pear, Spinach, & Pea Organic Baby Food; Mighty 4 Blends- Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch and Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch; Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin and Blueberry; Mighty Morning Bar- Blueberry Lemon and Apple Cinnamon; Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food; Apple with Spinach Super Puffs; Mango with Sweet Potato Super Puffs; Mighty Snack Bars- Blueberry and Strawberry; Teensy Snacks- Berry. Discovery may reveal additional products that also contain levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.  Plaintiffs reserve their right to include any such products in this action.

[4] *See* Healthy Babies Bright Futures' report: What's in My Baby's Food? https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed March 10, 2021); Table 1.

10.     Defendants claim they place the safety of their customers above all else,[5] and that their Baby Foods are organic, in direct contradiction to the true nature of their contents, which include Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

11.     It was recently revealed on information and belief that Defendants were knowingly, recklessly, and/or negligently selling the Baby Foods that contain arsenic, cadmium, lead, mercury, and/or perchlorate.

12.     A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform reveals that parents' trust has been violated. Ex. 1. The Subcommittee's investigation of the seven largest baby food manufacturers in the United States, including Defendants, was spurred by "reports alleging high levels of toxic heavy metals in baby foods" and the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development." Ex. 1 at 2.

13.     The Subcommittee's report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and … that the manufacturers have often sold foods that exceeded these levels." Ex. 1 at 4. Defendants were among the three companies that refused to cooperate with the Subcommittee's investigation, causing "great[] concern that their lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products." Ex. 1 at 5. "[E]ven limited independent testing has revealed the presence of toxic heavy metals in [Defendants'] baby food." Ex. 1 at 45.

14.     Defendants know their customers trust the quality of their products and that they expect Defendants' products to be free of Heavy Metals, perchlorate, and other undesirable toxins or contaminants. They also know that certain consumers seek out and wish to purchase premium baby foods that possess high quality ingredients free of toxins, contaminants, or chemicals and that these consumers will pay more for baby foods they believe possess these qualities than for baby foods they do not believe possess these qualities.

---

[5] https://www.plumorganics.com/faqs/ (last accessed March 9, 2021).

CONSOLIDATED CLASS ACTION COMPLAINT

15. As such, Defendants' promises, warranties, pricing, statements, claims, packaging, labeling, marketing, and advertising (hereinafter collectively referred to as "Marketing" or "Claims") center on representations and pictures that are intended to, and do, convey to consumers that their baby food, including their Baby Foods, possess certain qualities and characteristics that justify a premium price.

16. No reasonable consumer seeing Defendants' Marketing would expect the Baby Foods to contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants. Furthermore, reasonable consumers, like Plaintiffs, would consider the mere inclusion of Heavy Metals, perchlorate, or other undesirable toxins or contaminants a material fact when considering what baby food to purchase.

17. Defendants intended for consumers to rely on their Marketing, and reasonable consumers did in fact so rely. However, Defendants' Marketing is deceptive, misleading, unfair, and/or false because, among other things, the Baby Foods include undisclosed levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

18. Defendants' Baby Foods do not have a disclaimer regarding the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants that would inform consumers that the foods contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants and/or that Heavy Metals, perchlorate, or other undesirable toxins or contaminants can accumulate over time in a child's body to the point where poisoning, injury, and/or disease can occur.

19. Defendants' wrongful Marketing, which includes misleading, deceptive, unfair, and false Marketing and omissions, allowed them to capitalize on, and reap enormous profits from, consumers who paid the purchase price or a price premium for Baby Foods that were not sold as advertised. Defendants continue to wrongfully induce consumers to purchase their Baby Foods that are not as advertised.

20. Plaintiffs bring this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for use and not resale any of Defendants' Baby Foods.

## JURISDICTION AND VENUE

21. This Court has original jurisdiction over all causes of action asserted herein under the Class Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value or $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in states other than the state in which Defendants are citizens and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d)(2) do not apply.

22. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiffs suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this district, and Defendants conduct substantial business in this district and are headquartered in this district. Defendants have intentionally availed themselves of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

## THE PARTIES

23. Plaintiff Gulkarov ("Plaintiff Gulkarov") is, and at all times relevant hereto has been, a citizen of the state of California. She purchased the Baby Foods, specifically the Plum Organics Sweet Potato Baby Food and Plum Organics Apple & Carrot, for all three of her children from Vons and Albertsons grocery stores. Plaintiff Gulkarov last purchased the Baby Foods for her youngest child from July 2014 to 2017.

24. Plaintiff Gulkarov believed she was feeding her children healthy, nutritious food. Prior to purchasing the Baby Foods, Plaintiff Gulkarov saw Defendants' nutritional claims on the packaging, including the "organic" representations, which she relied on in deciding to purchase the Baby Foods. During the time she purchased and fed her children the Baby Foods, and due to the false and misleading claims and omissions by Defendants, she was unaware the Baby Foods contained or may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and would not have purchased the food if that information had been fully disclosed.

25. Plaintiff Torrence ("Plaintiff Torrence") is, and at all times relevant hereto has been, a citizen of the state of New York. She purchased the Baby Foods, specifically the Plum Organics pouches in Stages 1, 2, and 3, generally from Shop Rite, Stop & Shop, and Target stores.

Plaintiff Torrence purchased the Baby Foods for her daughter from approximately June 2020 until February 2021.

26.     Plaintiff Torrence believed she was feeding her child healthy, nutritious food. Prior to purchasing the Baby Foods, Plaintiff Torrence saw Defendants' nutritional claims on the packaging, including the "organic" representations, which she relied on in deciding to purchase the Baby Foods. During the time she purchased and fed her child the Baby Foods, and due to the false and misleading claims and omissions by Defendants, she was unaware the Baby Foods contained or may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and would not have purchased the food if that information had been fully disclosed.

27.     Plaintiff Kelly McKeon ("Plaintiff McKeon") is, and at all times relevant hereto has been, a citizen of the state of Minnesota. She purchased the Baby Foods for her child, including the Plum Organics Just Sweet Potato pouches, butternut squash carrot chickpea and corn pouches, apple and spinach Super Puffs, mango and sweet potato Super Puffs, blueberry Little Teethers multigrain wafers, blueberry Mighty Snack Bars, strawberry Mighty Snack Bars, apple and cinnamon Mighty Morning Bars, blueberry lemon Mighty Morning Bars, and berry Teensy Snacks. Plaintiff McKeon generally purchased the Baby Foods from Target and Whole Foods stores, from approximately 2018 until the present.

28.     Plaintiff McKeon believed she was feeding her child healthy, nutritious food. Prior to purchasing the Baby Foods, Plaintiff McKeon saw Defendants' nutritional claims on the packaging, including the "organic" representations, which she relied on in deciding to purchase the Baby Foods. During the time she purchased and fed her child the Baby Foods, and due to the false and misleading claims and omissions by Defendants, she was unaware the Baby Foods contained or may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and would not have purchased the food if that information had been fully disclosed.

29.     Plaintiff Josh Crawford ("Plaintiff Crawford") is, and at all times relevant hereto has been, a citizen of the state of Pennsylvania. He purchased the Baby Foods for his child, including the Plum Organics Just Prunes Organic Baby Food. Plaintiff Crawford generally

purchased the Baby Foods from Target, Weis Markets, and Amazon.com, from approximately 2018 until 2020.

30. Plaintiff Crawford believed he was feeding his child healthy, nutritious food. Prior to purchasing the Baby Foods, Plaintiff Crawford saw Defendants' nutritional claims on the packaging, including the "organic" representations, which he relied on in deciding to purchase the Baby Foods. During the time he purchased and fed his child the Baby Foods, and due to the false and misleading claims and omissions by Defendants, he was unaware the Baby Foods contained or may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and would not have purchased the food if that information had been fully disclosed.

31. As the result of Defendants' negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiffs were injured when they paid the purchase price or a price premium for the Baby Foods that did not deliver what they promised. Plaintiffs paid the purchase price on the assumption that the labeling of the Baby Foods was accurate and that they was free of Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and was safe to ingest. Plaintiffs would not have paid this money had they known that the Baby Foods contained or may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants. Further, should Plaintiffs encounter the Baby Foods in the future, they could not rely on the truthfulness of the Marketing, absent corrective changes to the packaging and advertising of the Baby Foods. Damages can be calculated through expert testimony at trial.

32. Defendant Plum, PBC was founded in 2007 and is incorporated in Delaware. Its headquarters are located at 1485 Park Avenue, Suite 200, Emeryville, California. Defendant Plum, PBC Terms of Use as being "governed by and construed in accordance with the laws of the State of California," and states exclusive jurisdiction and venue is in Alameda County.[6] Additionally, under "How to Contact Us," Defendant Plum, PBC lists its address at 1485 Park Avenue, Suite 200, in Emeryville, California.[7]

---

[6] https://www.plumorganics.com/terms-of-use/ (last accessed March 10, 2021).

[7] *Id*.

33.     Defendant Plum, Inc. (doing business as "Plum Organics") is incorporated in Delaware with its headquarters and principal place of business located at 1485 Park Avenue, Emeryville, California.

34.     Defendants formulate, develop, manufacture, label, distribute, market, advertise, and sell the Baby Foods under the Plum Organics name throughout the United States, including in this District, during the Class Period (defined below). Defendants created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Baby Foods.  Defendants are also responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing of the ingredients and finished baby foods.

35.     The Marketing for the Baby Foods, relied upon by Plaintiffs, was prepared, reviewed, and/or approved by Defendants and their agents at their headquarters in California and was disseminated by Defendants and their agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein.  The Marketing for the Baby Foods was designed to encourage consumers to purchase the Baby Foods and reasonably misled the reasonable consumer, *i.e.*, Plaintiffs and the Class members, into purchasing the Baby Foods.

36.     Defendants' Products are divided into groups according to the targeted infant or toddler age and/or type of food product.  For example, there are five groups designated for the youngest infants: Stage 1 (4+ months old), Stage 2 (6+ months old), Stage 3 (6+ months old), Super Puffs®, and Little Teethers.

## Stage 1

Stage 1 (4+ months) organic baby food is perfect for introducing solids or first foods to your budding eater. Using only non-GMO, organic ingredients, the blends are all unsalted, unsweetened, and kosher parve. And since our pouches are resealable, you can customize portion sizes that are perfect for your baby.



Peaches Baby Food



Sweet Potato Baby Food



Mangos Baby Food



Prunes Baby Food

CONSOLIDATED CLASS ACTION COMPLAINT

## Stage 2

Stage 2 (6+ months) organic baby food pouches are made with blends of fruit, veggies, grains, and Greek yogurt that are perfect for exposing your little foodie to unique flavors and colors.


Apple, Butternut Squash & Granola, 3.5oz


Pear, Blueberry, Avocado & Granola Baby Food


Strawberry, Banana & Granola 3.5oz


Mango, Carrot & Coconut Cream Baby Food

SHOW MORE >

## Stage 3

Stage 3 (6+ months), a line of culinary-inspired baby meals, are perfect for budding foodies. These hearty, flavorful meals are cooked to delight & develop baby's palate while helping to transition baby to table food.


Carrot, Spinach, Turkey, Corn, Apple & Potato Baby Food


Carrot, Sweet Potato, Corn, Pea & Chicken Baby Food


Carrot, Chickpea, Pea, Beef & Tomato Baby Food

## Super Puffs®

Super Puffs®, a colorful line of bite-sized, nutritious puffed snacks, are made with whole grains and organic veggies and fruit. Packed with 7 essential vitamins and minerals, Super Puffs® delight tiny taste buds with a rainbow of nutritional goodness.


Strawberry with Beet Cereal Snack


Apple with Spinach Cereal Snack


Blueberry with Purple Sweet Potato Cereal Snack


Mango with Sweet Potato Cereal Snack

## Little Teethers

Little ones can't wait to sink their gums into these delicious teething wafers. Delight budding palates with unique flavors as you encourage self-feeding.


Apple with Leafy Greens Wafers


Banana with Pumpkin Wafers


Blueberry Wafers

CONSOLIDATED CLASS ACTION COMPLAINT

1    37.    The Baby Foods, at a minimum, include:

2          a)   Just Sweet Potato Organic Baby Food:



10          b)   Just Peaches Organic Baby Food:



17          c)   Just Prunes Organic Baby Food:



d) Apple & Carrot Organic Baby Food:



e) Pear, Purple Carrot, & Blueberry Organic Baby Food:



f) Pear, Spinach, & Pea Organic Baby Food:



g) Butternut Squash, Carrot, Chickpea & Corn Organic Baby Food:



h) Pumpkin, Banana, Papaya, and Cardamom Organic Baby Food:



i) Apple, Raisin, & Quinoa Organic Baby Food:



j) Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin:



k) Little Teethers Organic Multigrain Teething Wafers- Blueberry



CONSOLIDATED CLASS ACTION COMPLAINT

l) Mighty Morning Bar- Blueberry Lemon



m) Mighty Morning Bar- Apple Cinnamon



n) Mighty Snack Bar- Blueberry:



CONSOLIDATED CLASS ACTION COMPLAINT

o) Mighty Snack Bar- Strawberry:



p) Mighty 4 Blends- Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch:



q) Mighty 4 Blends- Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch:



r) Super Puffs- Apple with Spinach:



s) Super Puffs- Mango with Sweet Potato:



t) Teensy Snacks- Berry



CONSOLIDATED CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS

**I.  A Congressional Investigation Found the Presence Heavy Metals in Baby Foods**

38.  On February 4, 2021, the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, published a report detailing its findings that Heavy Metals—including arsenic, cadmium, lead, and mercury—were present in "significant levels" in numerous commercial baby food products. Ex. 1.

39.  Defendants were one of the baby food manufacturers from whom the Subcommittee requested internal documents and test results. However, Defendants "refused to cooperate with the Subcommittee's investigation." Ex. 1.  Defendants refused to produce its testing standards and specific test results but instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.

| Product Name | Testing Date | Arsenic | Cadmium | Lead | Mercury |
|---|---|---|---|---|---|
| Plum Organics® Stage 2 Apple & Carrot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Banana & Apricot, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear & Mango, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pear, Spinach & Pea, 4oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Cauliflower & Leek, 3.5oz | 10/29/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Cherry, Purple Carrot, Blackberry & Millet, 3.5oz | 5/14/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/7/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Yellow Zucchini, Corn & Turmeric, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/17/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Peach, Pumpkin, Carrot & Cinnamon, 3.5oz | 5/25/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/1/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 5/2/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Pea, Kiwi, Pear & Avocado, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/16/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Eat Your Colors® Strawberry, Apple, Rhubarb & Oats, 3.5oz | 5/24/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Raisin & Quinoa, 3.5oz | 10/28/2017 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Apple, Plum, Berry & Barley, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 5/15/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Mango, Sweet Potato, Apple & Millet, 3.5oz | 6/27/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |
| Plum Organics® Stage 2 Banana, Zucchini & Amaranth, 3.5oz | 5/23/2018 | Meets Criteria | Meets Criteria | Meets Criteria | Meets Criteria |

40.  Defendants marked every product that it "meets criteria" without identifying what that criteria is. Ex. 1.  The Subcommittee found Defendants' "grading" concerning and misleading as it "raises questions about what [Defendants'] other thresholds actually are, and whether they exist." Ex. 1.

41. The investigation found that, when baby food manufacturers were left to self-regulate and establish their own Heavy Metals standards, they routinely failed to abide by their own standards. Ex. 1.

42. In its conclusion, the Subcommittee stressed the danger associated with the presence of Heavy Metals in baby food: "These toxic heavy metals pose serious health risks to babies and toddlers. Manufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and without any warning labeling whatsoever." Ex. 1.

43. In Defendants' published response to the Subcommittee's Report, they stated, "We are confident in the safety and quality of our products. Our top priority is to serve children healthy, nutritious food made from the best ingredients. We want to assure you that Plum's products are safe (and delicious) to eat!"[8]

44. However, under the FAQs section, Defendants fail to describe their "protocol for evaluating heavy metals in products" and simply claims they look to guidance from leading health and regulatory bodies, while also failing to identify the "healthy and regulatory bodies."[9]

## II. Defendants Falsely Marketed Their Baby Foods as Healthy While Omitting Any Mention of Heavy Metals

45. Defendants package, label, market, advertise, formulate, manufacture, distribute, and sell their Baby Foods throughout the United States, including California.

46. Defendants' advertised mission is to "nourish little ones with the very best food from the very first bite."[10] Defendants repeatedly tout their commitment to and use of organic and non-GMO ingredients in their products, including the Baby Foods.[11]

---

[8] https://www.plumorganics.com/faqs/ (last accessed March 9, 2021).

[9] *Id.*

[10] Plum Organics Mission Highlights, Fiscal Year 2018. Available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last accessed March 9, 2021).

[11] https://www.plumorganics.com/food-philosophy/ (last accessed March 10, 2021).





47.    Defendants also claim their "top priority" is "to serve children healthy, nutritious food made from the best ingredients."[12]

48.    Defendants tout their commitment to organic, healthy food, the "very best food."[13]

# Very best food

We believe that every little one deserves the best food from the start. For us, the best food is that which looks and tastes like the food from which it was born. It's nutritious, simple, organic, and made of quality ingredients.

---

[12] https://www.plumorganics.com/faqs/ (last accessed March 9, 2021).

[13] Plum Organics Mission Highlights, Fiscal Year 2018. Available at https://www.plumorganics.com/wp-content/uploads/2019/05/Plum_MissionReport2018.pdf (last accessed March 9, 2021).

49.     Defendants even state, "Our recipes always begin with organic, non-GMO ingredients from real foods like fruits, vegetables, whole grains, and proteins."[14]

50.     Defendants also promote their Baby Foods as organic and free from unnatural ingredients in order to place their products within the premium category of baby food.

51.     Defendants also claim to have a "comprehensive quality and food safety program"[15] where they "go beyond standard regulatory compliance to ensure integrity of our products," which includes "strict ingredient requirements" and "regular supplier audits."[16]

52.     Based on Defendants' decision to advertise, label, and market their Baby Foods as healthy, nutritious, organic, "made from the best ingredients," safe for consumption, and including "only" the healthy fruits, vegetables, or grains pictured on the label, they had a duty to ensure that these statements and the message portrayed by the labels' imagery were true and not misleading. As such, Defendants knew or should have known the Baby Foods included nondisclosed levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants and that these toxins can accumulate over time.

53.     The Baby Foods are available at numerous retail and online outlets. The Baby Foods are widely advertised, and Defendants include a Vice President of Brand and Marketing on their Executive Team.

54.     As discussed above, the Marketing of the Baby Foods also fails to disclose they contain or may contain any level of Heavy Metals, perchlorate, or other undesirable toxins or contaminants. Defendants intentionally omitted these contaminants in order to induce and mislead reasonable consumers to purchase their Baby Foods.

55.     As a result of Defendants' omissions, a reasonable consumer would have no reason to suspect the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants

---

[14]     https://web.archive.org/web/20200922014219/https://www.plumorganics.com/ingredients-glossary/ (last accessed March 10, 2021).

[15] *Id.*

[16] *Id.*

in the Baby Foods without conducting his or her own scientific tests or reviewing third party scientific testing of these products.

### III. Due to the Presence of Heavy Metals and/or Perchlorate in the Baby Foods, Defendants' Marketing and Omissions are Misleading

#### A. Heavy Metals

56.     At all times during the Class Period, Defendants knew or should have known the Baby Foods contained or may contain Heavy Metals and were not sufficiently tested for the presence of Heavy Metals.

57.     Defendants' Baby Foods contained or may contain Heavy Metals due to Defendants' failure to monitor for their presence in the ingredients and finished products. Defendants were aware of this risk and failed to disclose it to Plaintiffs and the Class.

58.     Defendants knew that Heavy Metals are a potentially dangerous contaminant that poses health risks to infants and children. Defendants knew or should have known the standards for the presence of Heavy Metals in baby food have become increasingly stringent in recent years.

59.     Defendants knew or should have known that they owed consumers a duty of care to prevent, or at the very least, minimize the presence of Heavy Metals in the Baby Foods to the extent reasonably possible.

60.     Defendants knew or should have known they owed consumers a duty of care to adequately test for Heavy Metals in the Baby Foods.

61.     Defendants knew consumers purchased the Baby Foods based on the reasonable expectation that Defendants manufactured the Baby Foods to the highest standards. Based on this expectation, Defendants knew or should have known consumers reasonably inferred that Defendants would hold the Baby Foods to the highest standards for preventing the inclusion of Heavy Metals in the Baby Foods and for the Heavy Metals testing of the ingredients in the Baby Foods as well as the final product.

62.     A recent Congressional report from the Subcommittee on Economic and Consumer Policy found that many of the products produced by the country's largest commercial baby food

manufacturers "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, which can endanger infant neurological development."[17]

63.     The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects." Ex. 1 at 2.

64.     Arsenic, lead, mercury, and cadmium- four heavy metals found in the Baby Foods- are neurotoxins, or poisons which affect the nervous system. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[18]

65.     The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[19] Even in trace amounts found in food, these heavy metals can alter the developing brain and erode a child's IQ. Ex. 1 at 1.

66.     Research continues to confirm that exposures to food containing arsenic, lead, mercury, and cadmium causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[20]

*Arsenic*

67.     The Baby Foods may contain arsenic, which when children are exposed to it early in life, causes "cognitive deficits among school-age children exposed early in life, and neurological

---

[17] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).

[18] Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 13 (last accessed March 10, 2021).

[19] *Id*. at 6.

[20] *Id*. at 1.

problems in adults who were exposed to arsenic-poisoned milk as infants."[21] "There is no evidence that the harm caused by arsenic is reversible."[22] Inorganic arsenic is highly toxic and a known cause of human cancers. Arsenic exposure can also cause respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, and damage children's central nervous systems and cognitive development.[23]

68. Based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA as a maximum contaminant level).

69. Moreover, the FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic.[24] The FDA is also considering limiting the action level for arsenic in infant rice cereals to 100 ppb.[25]

70. Again, Defendants did not cooperate with the Subcommittee's investigation and refused to produce their testing standards and specific test results. Ex. 1 at 2. Defendants instead

---

[21] *Id.* at 3.

[22] *Id.*

[23] U.S. House of Representatives Staff Report by the Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform: "Baby foods are tainted with dangerous levels or arsenic, lead, cadmium, and mercury." Available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed February 4, 2021).

[24] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).

[25] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (last accessed Feb. 10, 2021).

produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.[26]

**_Cadmium_**

71.     The Baby Foods may also contain cadmium, which has been shown to cause anemia, liver disease, and nerve or brain damage in animals that eat or drink it.

72.     Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage. Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[27] Cadmium, like lead, "displays a troubling ability to cause harm at low levels of exposure."[28] The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[29]

73.     The EPA has set a maximum contaminant level for cadmium in drinking water of 5 ppb, 40 C.F.R. § 141.62; the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb. Ex. 1 at 29.

---

[26]     Campbell, _Product Heavy Metal Test Results_ (Dec. 11, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Feb. 10, 2021).

[27]     Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 14 (last accessed March 10, 2021).

[28]     _Id._

[29]     ATSDR, Public Health Statement: Cadmium (Sept. 2012), https://www.atsdr.cdc.gov/phs/phs.asp?id=46&tid=15 (last accessed Feb. 10, 2021).

74.     Despite Defendants' assertion that all of their Baby Foods met criteria for each of the Heavy Metals, reports indicate that Defendants sold products containing levels as high as 6.3 ppb cadmium.[30]

***Lead***

75.     The Baby Foods may also contain lead, which is another carcinogen and developmental toxin known to cause health problems in children.

76.     Lead exposure can seriously harm the brain and nervous systems in children and is associated with a range of negative health outcomes such as behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth.

77.     Exposure to lead in foods builds up over time.  Build up can and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.

78.     Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[31]

79.     One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food.[32]  Additionally, studies have established a link between lead exposure and ADHD. Ex. 1 at 12.

80.     Although there is no federal standard for lead in baby food, health experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer

---

[30]     Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 27 (last accessed March 10, 2021).

[31]     *Id*. at 13.

[32]     *Id*. at 7.

Reports, have agreed that lead in baby foods should not exceed 1 ppb.[33] "The European Union has set the maximum lead level in infant formula to 20 ppb."[34]

81.     On January 15, 2021, the EPA issued Lead and Copper Rule Revisions, with a new "trigger level" for treatment of 10 ppb lead in drinking water, effective March 16, 2021. 86 F.R. 28691 (Jan. 15, 2021). Previously, the EPA had required treatment for water exceeding lead concentrations of 15 ppb. 40 C.F.R. 141, Subpart I.

82.     Again, Defendants did not cooperate with the Subcommittee's investigation and instead produced a spreadsheet that "self-declared" that every product met criteria for each of the Heavy Metals, while declining to state what the criteria were.[35]

83.     Other reports, however, indicate Defendants sold products containing levels as high as 14 ppb lead.[36]

***Mercury***

84.     The Baby Foods may also contain mercury, which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[37] Mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children. Ex. 1 at 12-13.

---

[33] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, The Washington Post (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 10, 2021).

[34] *Id.*

[35] Campbell, *Product Heavy Metal Test Results* (Dec. 11, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/12.pdf) (last accessed Feb. 10, 2021).

[36] Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 22 (last accessed March 10, 2021).

[37] *Id.* at 14.

85. The EPA has set a maximum contaminant level for mercury in drinking water at 2 ppb. Ex. 1 at 32.

86. While federal regulations regarding levels of Heavy Metals in most baby foods are non-existent, it is not due to a lack of risk. According to Linda McCauley, Dean of the Nell Hodgson Woodruff School of Nursing at Emory University, who studies environmental health effects, stated, "No level of exposure to these [heavy] metals has been shown to be safe in vulnerable infants."[38]

87. Indeed, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[39]

88. Despite the known risks of exposure to these heavy metals, Defendants have negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing they may contain levels of arsenic, mercury, cadmium and lead to consumers like Plaintiffs.

**B. Perchlorate**

89. The Baby Foods may contain perchlorate, a neurotoxic chemical compound. Perchlorate can disrupt the function of the thyroid, which is crucial for normal growth and development of the central nervous system in infants and young children.[40] It has also been "linked to IQ loss among children born to mothers with thyroid dysfunction."[41]

---

[38] https://www.nytimes.com/2021/02/04/health/baby-food-metals-arsenic.html (last accessed February 5, 2021).

[39] FDA, Metals, https://www.fda.gov/Food/FoodborneIllnessContaminants/Metals/default.htm (last accessed Feb. 10, 2021).

[40] https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers (last accessed March 9, 2021).

[41] Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf at 8 (last accessed March 10, 2021).

90. The levels of perchlorate in children's food has increased significantly from 2005. Perchlorate, which is both a naturally occurring and manmade chemical, was approved by the FDA in 2005 for use as an antistatic in plastic food packaging. In 2016, the FDA expanded the approval to cover dry food handling equipment. Hypochlorite bleach, which is used to disinfect food processing equipment, can also create perchlorate as a product of degradation.

91. The dangers of perchlorate in human food are recognized by the FDA.[42] The EPA has also recognized the dangers of perchlorate in drinking water and has set the maximum contaminant level goal for perchlorate in drinking water of 56 µg/L. 85 F.R. 43990 (July 21, 2020).

92. At all times during the Class Period, Defendants knew or should have known the Baby Foods contained or may contain perchlorate, and/or were not sufficiently tested for perchlorate. During this time, Defendants omitted any reference to the presence or risk of perchlorate from the Baby Foods' packaging.

93. Defendants knew or should have known that perchlorate is a potentially dangerous contaminant that poses health risks to infants and children.

94. Defendants knew or should have known they owed consumers a duty of care to prevent, or at the very least, minimize, the presence of perchlorate in the Baby Foods.

95. Defendants knew or should have known they owed consumers a duty of care to adequately test for perchlorate in the Baby Foods.

96. Defendants knew consumers purchased the Baby Foods based on the reasonable expectation that Defendants manufactured the Baby Foods to the highest standards to be safe and healthy for consumption by infants and children. Defendants knew or should have known consumers reasonably inferred that they would hold the Baby Foods to the highest standards for preventing the presence or risk of perchlorate and for testing for perchlorate.

---

[42] FDA, Exploratory Survey Data on Perchlorate in Food 2004-2005, https://www.fda.gov/food/chemicals/exploratory-survey-data-perchlorate-food-2004-2005 (last accessed Feb. 10, 2021). ("Human exposure to sufficient doses of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting its functions and potentially leading to a reduction in the production of thyroid hormones.").

97.    Still, certain Baby Foods are sold by Defendants that may contain levels of perchlorate.

98.    Despite the risk and/or actual presence of these unnatural and potentially harmful chemicals, Defendants prominently warrant, claim, feature, represent, advertise, or otherwise market the Baby Foods as "organic" and appropriate for consumption by infants and fail to disclose the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

**IV.    Defendants' Marketing Misled and Deceived Consumers**

99.    Defendants' Marketing wrongfully conveys to consumers that their Baby Foods have certain superior quality and characteristics that they do not actually possess.

100.    For instance, although Defendants misleadingly cause consumers to believe their Baby Foods do not contain Heavy Metals through their Marketing and omissions, the Baby Foods do in fact contain undisclosed Heavy Metals, which is material information to reasonable consumers.

101.    For example, the following foods were tested and found to contain undisclosed Heavy Metals at the following levels:[43]

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Perchlorate (ppb) |
|------|------|------|------|------|------|------|
| Plum Organics Gentle Organic Infant Formula with Iron, Milk-Based Powder-0-12 months | 4.6 | --[44] | 4.7 | < 1.1 | < 0.278 | -- |

---

[43] The following chart represents the levels of Heavy Metals in Defendants' products included in the Healthy Babies Bright Futures Report, dated October 2019.    Available at: https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed February 4, 2021).

[44] "--" indicates that analysis was not performed by Healthy Babies Bright Futures.

| Food | Arsenic (total, ppb) | Arsenic (inorganic, ppb) | Lead (ppb) | Cadmium (ppb) | Mercury (total, ppb) | Perchlorate (ppb) |
|---|---|---|---|---|---|---|
| Plum Organics Just Sweet Potato Organic Baby Food- 1, 4 months | 3.1*[45] | -- | 5.6 | 2.3 | <0.142 | -- |
| Plum Organics Just Peaches Organic Baby Food (Stage 1) | 7.2 | -- | 0.9* | <0.5 | <0.139 | -- |
| Plum Organics Just Prunes Organic Baby Food- 1, 4 months & up | 7.6 | -- | 2.5 | <0.5 | 0.194* | -- |
| Plum Organics Pumpkin Banana Papaya Cardamom, 6 months & up | 2.4* | -- | 1.4* | 2.4 | <0.139 | -- |
| Plum Organics Apple, Raisin, & Quinoa Organic Baby Food- 2 | 5.6* | -- | 2.2 | 1.9 | 0.145* | -- |
| Plum Organics Little Teethers Organic Multigrain Teething Wafers- Banana with Pumpkin- Baby Crawler | 49.9 | -- | 1.4* | 6.3 | 0.726 | -- |
| Plum Organics Mighty Morning Bar- Blueberry Lemon- Tots, 15 months & up | 40[46] | 39 | 3.4 | 24.3 | <0.137 | 1.8(J) |

*Table 1.*

---

[45] An "*" indicates that test results were estimated, between the limit of detection and the limit of quantitation.

[46] "This value is the average of 3 tests of total arsenic (44, 37, and 39 ppb). The original homogenized bar was tested twice, and homogenate of a second, separate bar from the same box was tested once."

CONSOLIDATED CLASS ACTION COMPLAINT

102.    In addition, testing recently conducted by an independent laboratory further confirmed the presence of undisclosed Heavy Metals in the Baby Foods:

|  | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) | Mercury (ppb) |
|---|---|---|---|---|
| Plum Organics Pear, Purple Carrot, & Blueberry Organic Baby Food, Sample 1 | 7.6 | 3.4 | 4.6 | < 1.9 |
| Plum Organics Pear, Purple Carrot, & Blueberry Organic Baby Food, Sample 2 | 7.5 | 4.3 | 4.3 | < 1.9 |
| Plum Organics Pear, Spinach, & Pea Organic Baby Food, Sample 1 | 3.4 | 20.1 | 1.6 | < 1.7 |
| Plum Organics Pear, Spinach, & Pea Organic Baby Food, Sample 2 | 4.0 | 27.3 | 1.8 | < 1.7 |
| Plum Organics Just Sweet Potato Organic Baby Food, Sample 1 | 3.0 | 3.5 | 31.0 | < 1.8 |
| Plum Organics Just Sweet Potato Organic Baby Food, Sample 2 | 2.9 | 3.9 | 30.0 | < 1.6 |
| Plum Organics Mighty 4 Blends Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch | 2.8 | 2.9 | 2.7 | < 1.7 |
| Plum Organics Mighty 4 Blends Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch | 7.4 | 7.7 | 3.9 | < 1.8 |

*Table 2*.

103.    Defendants' Marketing wrongfully fails to disclose to consumers the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in their Baby Foods.

104.    Based on Defendants' Marketing, a reasonable consumer would not suspect the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants, nor would a reasonable consumer be able to detect the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods without conducting his or her own scientific tests or reviewing scientific testing conducted on the Products.

105. Reasonable consumers must and do rely on Defendants to honestly report what their Baby Foods contain.

106. In light of Defendants' Marketing, including their "comprehensive" quality controls, Defendants knew or should have known the Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

107. Defendants had a duty to ensure the Baby Foods were as they were represented and not deceptively, misleadingly, unfairly, and falsely marketed.

108. Pursuant to the foregoing, Defendants' Marketing is deceptive, misleading, unfair, and false to Plaintiffs and other consumers, including under the consumer protection laws of California.

109. Defendants acted negligently, recklessly, unfairly, and/or intentionally with their deceptive, misleading, unfair, and false Marketing and omissions.

110. Defendants knew that properly and sufficiently monitoring for Heavy Metals, perchlorate, and other undesirable toxins or contaminants in their ingredients and Baby Foods was not only important, but critical.

111. Additionally, Defendants knew or should have been aware that a consumer would be feeding the Baby Foods multiple times each day to his or her child, making it a primary source of food for the child. This leads to repeated exposure of the Heavy Metals, perchlorate, or other undesirable toxins or contaminants to the child.

112. Finally, Defendants knew or should have known they could control the levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods by properly monitoring their ingredients for Heavy Metals, perchlorate, or other undesirable toxins or contaminants and adjusting any formulation or diet to reduce ingredients that contained or may contain higher levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

113. Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public. This is true especially considering the long-standing campaign by Defendants to market the Baby Foods as healthy, nutritious, organic, and made from the best ingredients to induce consumers, such as Plaintiffs, to purchase the products.

114. Using such descriptions and promises makes Defendants' advertising campaign deceptive based on the presence or risk of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods. Reasonable consumers, like Plaintiffs, would consider the mere presence or risk of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods a material fact when considering what baby food to purchase.

115. At all times during the Class Period, Defendants knew they were not sufficiently and consistently monitoring or testing the Baby Foods or their ingredients for Heavy Metals, perchlorate, or other undesirable toxins or contaminants. Defendants knew their failure to properly and sufficiently test for Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods continued throughout the Class Period.

116. Defendants knew, yet failed to disclose, their lack of regular testing, monitoring, and knowledge Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods and ingredients.

117. Defendants' Marketing was misleading due to their failure to properly and sufficiently monitor for and to disclose the risk of the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.

118. Defendants knew or should have known the Baby Foods contained or may contain unmonitored levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants that were inconsistent with their Marketing.

119. Defendants knew or should have known that consumers expected them to ensure the Baby Foods and ingredients were monitored and tested for Heavy Metals, perchlorate, or other undesirable toxins or contaminants to ensure compliance with their Marketing.

120. Defendants knew or should have known consumers paid premium prices and expected Defendants to regularly test for Heavy Metals, perchlorate, or other undesirable toxins or contaminants and sufficiently monitor the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods and ingredients.

121. Defendants' above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the

Baby Foods are healthy, nutritious, organic, and made from the best ingredients, are subject to stringent quality control, and are free of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

122.    Moreover, reasonable consumers, such as Plaintiffs and the Class members, would have no reason to doubt Defendants' statements regarding the quality of the Baby Foods. Defendants' nondisclosure and/or concealment of the Heavy Metals, perchlorate, or other undesirable toxins and contaminants in the Baby Foods, coupled with the misrepresentations alleged herein that were intended to and did, in fact, cause consumers like Plaintiffs and the members of the Class, to purchase products they would not have if the true quality and ingredients were disclosed or would not have paid a premium price for such baby food.

123.    As a result of Defendants' wrongful Marketing, which includes misleading, deceptive, unfair, and false statements and omissions, Defendants have generated substantial sales of the Baby Foods, which allowed them to capitalize on, and reap enormous profits from, consumers who paid the purchase price or premium for the Baby Foods that were not as advertised.

124.    This is not surprising given that, for example, organic baby food was valued at were $1.9 billion in the U.S. in 2018 and is expected to reach $3.32 billion by 2024.[47]

125.    The incredible rise in consumer demand for organic baby food is "driven by the growing awareness among consumers to limit that baby's exposure to the harmful chemicals used in conventional food production and the awareness of the benefits of organic products."[48]

**DEFENDANTS' STATEMENTS AND OMISSIONS VIOLATE CALIFORNIA LAWS**

126.    California law is designed to ensure that a company's claims about its products are truthful and accurate.

---

[47]    https://www.businesswire.com/news/home/20200120005436/en/North-America-Organic-Baby-Food-Market-Expected-to-Reach-a-Value-of-3.32-Billion-by-2024-with-a-CAGR-of-9.6---ResearchAndMarkets.com (last accessed February 4, 2021).

[48]    https://www.mordorintelligence.com/industry-reports/organic-baby-food-market (last accessed February 4, 2021).

127.     Defendants violated California law by negligently, recklessly, and/or intentionally incorrectly claiming that the Baby Foods are healthy, nutritious, organic, and "made from the best ingredients," and by not accurately detailing that the products contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

128.     Defendants' marketing and advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, that it would be unrealistic to require Plaintiffs to plead relying upon each advertised misrepresentation.

129.     Defendants have engaged in this long-term advertising campaign to convince potential customers that the Baby Foods were healthy, nutritious, organic, and "made from the best ingredients," and did not contain harmful ingredients, such as Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

**PLAINTIFFS' RELIANCE WAS REASONABLE AND FORESEEN BY DEFENDANTS**

130.     Plaintiffs reasonably relied on Defendants' claims, warranties, representations, advertisements, and other marketing concerning the particular qualities and benefits of the Baby Foods.

131.     Plaintiffs read and relied upon the labels and packaging of the Baby Foods when making their purchasing decisions. Had they known Defendants omitted the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants from their packaging, they would not have purchase it.

132.     A reasonable consumer would consider the labeling of a product when deciding whether to purchase. Here, Plaintiffs relied on the specific statements and omissions on the Baby Foods' labeling that led them to believe it was healthy, nutritious, organic, and "made from the best ingredients," and free of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

**DEFENDANTS' KNOWLEDGE AND NOTICE OF THEIR BREACHES OF THEIR EXPRESS AND IMPLIED WARRANTIES**

133.     Defendants had sufficient notice of their breaches of express and implied warranties. Defendants have, and had, exclusive knowledge of the physical and chemical make-

up of the Baby Foods. Defendants also had exclusive knowledge of their suppliers and whether any suppliers provided ingredients that contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

134. Moreover, Defendants were put on notice by the Healthy Babies Bright Future Report about the inclusion of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.[49]

135. Defendants did not change their packaging or labels to include any disclaimer that the Baby Foods contained or may contain any levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

## PRIVITY EXISTS WITH PLAINTIFFS AND THE PROPOSED CLASS

136. Defendants knew that consumers such as Plaintiffs and the proposed Class would be the end purchasers of the Baby Foods and the target of their advertising and statements.

137. Defendants intended that the warranties, advertising, labeling, statements, and representations would be considered by the end purchasers of the Baby Foods, including Plaintiffs and the proposed Class.

138. Defendants directly marketed to Plaintiffs and the proposed Class through statements on their website, labeling, advertising, and packaging.

139. Plaintiffs and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

140. Plaintiffs bring this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who, from February 5, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Class").

---

[49] Healthy Babies Bright Futures report, What's in My Baby's Food, https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (last accessed March 10, 2021).

141. Plaintiff Gulkarov brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who, from February 5, 2015, to the present purchased the Baby Foods for household or business use, and not for resale (the "California Subclass").

142. Plaintiff Torrence brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of New York who, from February 5, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "New York Subclass").

143. Plaintiff McKeon brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of Minnesota who, from February 5, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Minnesota Subclass").

144. Plaintiff Crawford brings this action individually and on behalf of the following Subclass pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of Pennsylvania who, from February 5, 2015, to the present, purchased the Baby Foods for household or business use, and not for resale (the "Pennsylvania Subclass").

145. Excluded from the Class and Subclasses (collectively, "Classes") are the Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

146. This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

147. The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of all Classes in a single action will provide substantial benefits to the parties and Court.

148. Questions of law and fact common to Plaintiffs and the Classes include, but are not limited to, the following:

(a)     whether Defendants owed a duty of care;

(b)     whether Defendants knew or should have known that the Baby Foods contained or may contain Heavy Metals;

(c)     whether Defendants knew or should have known the Baby Foods contained or may contain perchlorate;

(d)     whether Defendants represented and continue to represent that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption (by infants);

(e)     whether Defendants represented and continue to represent that the manufacturing of their Baby Foods are subjected to rigorous quality standards;

(f)     whether Defendants represented and continue to represent the Baby Foods as organic;

(g)     whether Defendants failed to disclose that the Baby Foods contained or may contain Heavy Metals;

(h)     whether Defendants failed to disclose that the Baby Foods contained or may contain perchlorate;

(i)     whether Defendants' representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

(j)     whether those representations are likely to deceive a reasonable consumer;

(k)     whether Defendants had knowledge that those representations were false, deceptive, and misleading;

(l)     whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(m)     whether a representation that a product is healthy, nutritious, organic, made from the best ingredients, and safe for consumption and does not contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants is material to a reasonable consumer;

(n)     whether Defendants' Marketing of the Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

1            (o)      whether Defendants violated the laws of the State of California;

2            (p)      whether Defendants violated the laws of the State of New York;

3            (q)      whether Defendants violated the laws of the State of Minnesota;

4            (r)      whether Defendants violated the laws of the State of Pennsylvania;

5            (s)      whether Defendants breached their express warranties;

6            (t)      whether Defendants breached their implied warranties;

7            (u)      whether Defendants engaged in unfair trade practices;

8            (v)      whether Defendants engaged in false advertising;

9            (w)      whether Defendants' conduct was negligent per se;

10            (x)      whether Defendants made negligent and/or fraudulent misrepresentations

11 and/or omissions;

12            (y)      whether Plaintiffs and members of the Class are entitled to actual, statutory,

13 and punitive damages; and

14            (z)      whether Plaintiffs and the members of the Class are entitled to declaratory

15 and injunctive relief.

16         149.    Defendants engaged in a common course of conduct giving rise to the legal rights

17 sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes.

18 Identical statutory violations and business practices and harms are involved.  Individual questions,

19 if any, are not prevalent in comparison to the numerous common questions that dominate this

20 action.

21         150.    Plaintiffs' claims are typical of those of the members of the Classes in that they are

22 based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

23         151.    Plaintiffs will fairly and adequately represent and protect the interests of the

24 Classes, have no interests incompatible with the interests of the Classes, and have retained counsel

25 competent and experienced in class action, consumer protection, and false advertising litigation.

26         152.    Class treatment is superior to other options for resolution of the controversy

27 because the relief sought for each member of the Classes is small such that, absent representative

28 litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

153.	Questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes.

154.	As a result of the foregoing, class treatment is appropriate.

<div align="center">

**COUNT I**

**(Negligent Misrepresentation Against Defendants on Behalf of the Class or, Alternatively, the State Subclasses)**

</div>

155.	Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

156.	Plaintiffs reasonably placed their trust and reliance in Defendants' representations that the Baby Foods were as marketed to them and the Class, and were healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and did not contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

157.	Because of the relationship between the parties, Defendants owed Plaintiffs and the Class a duty to use reasonable care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Baby Foods, and to impart correct and reliable disclosures concerning the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods or, based upon their superior knowledge, having spoken, to say enough to not be misleading.

158.	Defendants breached their duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the ingredients, qualities, characteristics, and suitability for consumption as marketed by Defendants and by providing false, misleading, and/or deceptive information regarding the nature of the Baby Foods.

159.	Defendants knew or should have known the ingredients, qualities, and characteristics of the Baby Foods were not as advertised or suitable for their intended use (consumption by infants), and were otherwise not as warranted and represented.

160.	Plaintiffs and the Class reasonably and justifiably relied upon the information supplied to them by the Defendants.  A reasonable consumer would have relied on Defendants'

warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the Baby Foods.

161.    As a direct and proximate result of Defendants' misrepresentations, Plaintiffs and the Class suffered actual damages in that they purchased the Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known they contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

162.    Defendants failed to use reasonable care in their communications and representations to Plaintiffs and the Class, especially in light of their knowledge of the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods and the importance consumers place on ingredients when deciding whether to purchase products such as the Baby Foods.

163.    By virtue of Defendants' negligent misrepresentations, Plaintiffs and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

## COUNT II

**(Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750,**
***Et Seq.*****, Against Defendants on Behalf of the Class)**

164.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

165.    Plaintiffs and each proposed Class member are a "consumer," as that term is defined in California Civil Code section 1761(d).

166.    The Baby Foods are "goods," as that term is defined in California Civil Code section 1761(a).

167.    Defendants are a "person" as that term is defined in California Civil Code section 1761(c).

168.    Plaintiffs and each proposed Class member's purchase of Defendants' products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

169.    Defendants' conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods;

(b)    California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Baby Foods were of a particular standard, quality, or grade, when they were of another;

(c)    California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Baby Foods with intent not to sell them as advertised; and

(d)    California Civil Code section 1770(a)(16), by representing that the Baby Foods have been supplied in accordance with previous representations when they have not.

170.    As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed, and that harm will continue unless Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Baby Foods.

171.    Plaintiffs seek an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

### COUNT III

**(Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendants on Behalf of the Class)**

172.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

173.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

174. As set forth herein, Defendants' claims that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public.

175. Defendants' claims that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to mention the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.

176. Defendants knew, or reasonably should have known, that all these claims were untrue or misleading.

177. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to purchase these products in the future if they can be assured that, so long as the Baby Foods are as advertised: healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and do not contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

178. Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Baby Foods.

**COUNT IV**

**(Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendants on Behalf of the Class)**

179. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

180. The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §17200.

**Fraudulent**

181. Defendants' statements that the Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public, as is Defendants' failing to make any mention of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.

**Unlawful**

182.　As alleged herein, Defendants have advertised the Baby Foods with false or misleading claims, such that Defendants' actions as alleged herein violate at least the following laws:

- The CLRA, California Business & Professions Code sections 1750, *et seq.*; and
- The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

183.　Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

184.　Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

185.　Defendants' conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

186.　In accordance with California Business & Professions Code section 17203, Plaintiffs seek an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

187.　On behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies from the sale the Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT V

**(Breach of Express Warranty Against Defendants on Behalf of the Class, or Alternatively, the State Subclasses)**

188.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

189.    Defendant marketed and sold the Baby Foods into the stream of commerce with the intent that the Baby Foods would be purchased by Plaintiffs and the Class.

190.    As set forth herein, Defendant made express representations to Plaintiffs and the Class that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

191.    Defendants made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing through their website, advertisements, and marketing materials and on the Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Baby Foods.

192.    Defendants' advertisements, warranties, and representations were made in connection with the sale of the Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendants' advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendants' products. Such promises became part of the basis of the bargain between the parties, and thus constituted express warranties.

193.    On the basis of these express warranties, Defendants sold to Plaintiffs and the Class members the Baby Foods.

194.    Defendants knowingly breached the express warranties by including Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.

195.    Defendants were on notice of this breach as they was aware of the included Heavy Metals in the Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed their baby food products as containing Heavy Metals and/or perchlorate.

1   196.   Privity exists because Defendants expressly warranted to Plaintiffs and the Class

2   that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for

3   consumption, and by failing to make any mention of Heavy Metals, perchlorate, or other

4   undesirable toxins or contaminants.

5   197.   Plaintiffs and the Class members reasonably relied on the express warranties by

6   Defendants.

7   198.   As a direct and proximate result of Defendants' breach of their express warranties,

8   Plaintiffs and the Class sustained damages as they purchased the Baby Foods that were worth less

9   than the price paid and they would not have purchased at all had they known the Baby Foods

10  contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants

11  that do not conform to the products' labels, packaging, advertising, and statements.

12  199.   Plaintiffs, on behalf of themselves and the Class, seek actual damages for

13  Defendants' failure to deliver goods that conform to their express warranty and resulting breach.

14  **<u>COUNT VI</u>**

15  **(Breach of Implied Warranty of Merchantability Against Defendants on Behalf of the Class or, Alternatively, the State Subclasses)**

16  200.   Plaintiffs incorporate by reference and reallege each and every allegation contained

17  above, as though fully set forth herein.

18  201.   Defendants are a merchant engaging in the sale of goods to Plaintiffs and the Class

19  members.

20  202.   There was a sale of goods from Defendants to Plaintiffs and the Class members.

21  203.   As set forth herein, Defendants manufactured and sold the Baby Foods, and prior

22  to the time the Baby Foods were purchased by Plaintiffs and the Class, impliedly warranted that

23  the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by infants),

24  and conformed to the promises and affirmations of fact made on the Baby Foods' labels and

25  packaging, including that the food was healthy, nutritious, organic, made from the best ingredients,

26  and appropriate for human infant consumption.

27

28

CONSOLIDATED CLASS ACTION COMPLAINT

204. Plaintiffs and the Class relied on Defendants' promises and affirmations of fact when they purchased the Baby Foods.

205. The Baby Foods were not fit for their ordinary use (consumption by infants) and did not conform to Defendants' affirmations and promises as they contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the packaging or labels.

206. These promises became part of the basis of the bargain between the parties and thus constituted implied warranties.

207. Defendants breached the implied warranties by selling the Baby Foods that failed to conform to the promises or affirmations of fact made on the packaging or labels as each product contained Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

208. Defendants were on notice of this breach as they were aware of the inclusion of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods, and based on the public investigation by the nonprofit organization, Healthy Babies Bright Futures, that showed their baby food products as containing Heavy Metals and/or perchlorate.

209. Privity exists because Defendants impliedly warranted to Plaintiffs and the Class members through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption and by failing to make any mention of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

210. As a direct and proximate result of Defendant's breach of their implied warranties, Plaintiffs and the Class suffered actual damages as they purchased the Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the presence of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

211. Plaintiffs, on behalf of themselves and the Class, seek actual damages for Defendant's failure to deliver goods that conform to their implied warranties and resulting breach.

**COUNT VII**
**(Violations of New York's Deceptive Practices Act, N.Y. Gen. Bus. Law § 349,**
**Against Defendant on Behalf of Plaintiff Torrence and the New York Subclass)**

212.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

213.    New York General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

214.    In their sale of goods throughout New York, Defendants conduct business and trade within the meaning and intendment of New York General Business Law § 349.

215.    Defendants violated N.Y. Gen. Bus. Law § 349 by representing that their Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption, which was deceptive because of the inclusion of Heavy Metals, perchlorate, or other undesirable toxins or contaminants in the Baby Foods.

216.    Defendants intentionally represented that the Baby Foods were of a particular standard, grade, or quality when they in fact contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants and were not safe for consumption.

217.    The facts that Defendants concealed or misrepresented were material in that Plaintiff Torrence and the New York Subclass, and any other reasonable consumer would have considered them when deciding whether to purchase the Baby Foods.

218.    Defendants' conduct and omissions described herein repeatedly occurred in the course of Defendants' business and were capable of deceiving a substantial portion of the consuming public.

219.    Defendants have engaged and continue to engage in deceptive conduct in violation of the New York General Business Law.

220.    Defendants' misrepresentations and deceptive acts or practices resulted in Plaintiff Torrence and the New York Subclass and other reasonable consumers suffering actual damages when they purchased the Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known of the inclusion of Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

221. Defendants intended for Plaintiff Torrence and the New York Subclass and other reasonable consumers to rely on their deceptive misrepresentations and conduct when the Baby Foods.

222. As a direct and proximate result of these violations, Plaintiff Torrence and the New York Subclass and other reasonable consumers have been harmed, and that harm will continue unless Defendants are enjoined from misrepresenting the quality and ingredients of the Baby Foods described herein.

223. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff Torrence and the New York Subclass seek injunctive and declaratory relief, full refund, actual and punitive damages, and attorneys' fees.

<div align="center">

**COUNT VIII**
**(Violation of Minnesota Unlawful Trade Practices Act**
**Minn. Stat. § 325D.13,** *et seq.* **on Behalf of Plaintiff McKeon and the Minnesota Subclass)**

</div>

224. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

225. Defendants are a "person" within the meaning of the Minnesota Unlawful Trade Practices Act ("MUTPA").

226. Defendants violated the MUTPA by knowingly misrepresenting the true quality and ingredients of the Baby Foods by falsely claiming they were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

227. Defendants knew or should have known the Baby Foods did not have the quality and ingredients described above because they contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

228. Defendants' pattern of knowing misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' quality, ingredients, and suitability for consumption by infants.

229. Defendants intended that Plaintiff McKeon and the Minnesota Subclass to rely on their misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' quality, ingredients, and suitability for consumption by infants.

230. Defendants' conduct and omissions described herein occurred repeatedly in their trade or business and were capable of deceiving a substantial portion of the consuming public.

231. The facts concealed or not disclosed by Defendants were material facts in that Plaintiff McKeon, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods. Had Plaintiff McKeon known the Baby Foods did not have the quality advertised by Defendants, she would not have purchased the Baby Foods.

232. Defendants' unlawful conduct is continuing, with no indication that they intend to cease this fraudulent course of conduct.

233. As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

234. Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of Heavy Metals, perchlorate, or any other undesirable toxins or contaminants that do not conform to the packaging claims.

235. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.15, Plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUTPA.

## COUNT IX
### (Violation of Minnesota Uniform Deceptive Trade Practices Act
### Minn. Stat. § 325D.44, *et seq.* on Behalf of Plaintiff McKeon and the Minnesota Subclass)

236. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

237. Defendants are a "person" within the meaning of the Minnesota Uniform Deceptive Trade Practices Act (MUDTPA).

238. Defendants willingly engaged in deceptive trade practices, in violation of the MUDTPA, by knowingly misrepresenting the true quality of the Baby Foods by falsely claiming that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

239. Defendants knew or should have known the Baby Foods did not have the quality and ingredients described above because they contained or may contain Heavy Metals, perchlorate, or any other undesirable toxins or contaminants that do not conform to the packaging claims.

240. Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants.

241. Defendants intended that Plaintiff McKeon and the Minnesota Subclass would rely on Defendants' misrepresentations, concealment, warranties, deceptions, and/or omissions regarding the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants.

242. Defendants' conduct and omissions described herein occurred repeatedly in their trade or business and were capable of deceiving a substantial portion of the consuming public.

243. The facts concealed or not disclosed by Defendants were material facts in that Plaintiff McKeon, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods. Had Plaintiff McKeon known the Baby Foods did not have the quality advertised by Defendants, she would not have purchased the Baby Foods.

244. Defendants intended that Plaintiff McKeon and the Minnesota Subclass would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

245. Defendants' unlawful conduct is continuing, with no indication they intend to cease this fraudulent course of conduct.

246. As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

247. Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of these Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the packaging.

248. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325D.45, Plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MUDTPA.

## COUNT X
### (Violation of Minnesota False Statement in Advertising Act
### Minn. Stat. § 325F.67, *et. seq.* on Behalf of Plaintiff McKeon and the Minnesota Subclass)

249. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

250. Plaintiff McKeon purchased "goods," specifically the Baby Foods discussed herein, and is a "person" within the meaning of the False Statement in Advertising Act ("FSAA").

251. Plaintiff McKeon purchased the Baby Foods because of Defendants' statements on the packaging that contained numerous material assertions, representations, and statements of fact made, published, disseminated, circulated, and placed before the public by Defendants that were untrue, deceptive, and misleading.

252. By engaging in the conduct herein, Defendants continue to violate Minn. Stat. § 325F.67.

253. Defendants' misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example, representations that the Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

254. Defendants knew or should have known the Baby Foods did not have the quality and ingredients described above because they contained or may contain Heavy Metals, perchlorate, or any other undesirable toxins or contaminants that do not conform to the packaging claims.

255. Defendants' misrepresentations, concealment, omissions, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff McKeon and the Minnesota Subclass with respect to the Baby Foods' ingredients, uses, benefits, standards, quality, grade, and suitability for consumption by infants.

256. Defendants' conduct and omissions described herein occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the consuming public.

257. The facts concealed or not disclosed by Defendants were material facts in that Plaintiff McKeon, the Minnesota Subclass, and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods. Had Plaintiff McKeon known the Baby Foods did not have the quality as advertised by Defendants, she would not have purchased the Baby Foods.

258. Defendants intended that Plaintiff McKeon and the Minnesota Subclass would rely on the deception by purchasing the Baby Foods, unaware of the undisclosed material facts. This conduct constitutes consumer fraud.

259. Defendants' unlawful conduct is continuing, with no indication that they intend to cease this fraudulent course of conduct.

260. As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that was worth less than the price they paid.

261. Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of these Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

262. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.67, Plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Plum's violations of the FSAA.

<div align="center">

**COUNT XI**

**(Violation of Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. § 325F.69, *et. seq.* on Behalf of Plaintiff McKeon and the Minnesota Subclass)**

</div>

263. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

264. Plaintiff McKeon is a resident of the State of Minnesota.

265. Defendants are a "person" within the meaning of the Minnesota Prevention of Consumer Fraud Act (MPCFA).

266. Defendants' representations with respect to the Baby Foods were made in connection with the sale of the Baby Foods to Plaintiff McKeon and the Minnesota Subclass.

267. Defendants knowingly acted, used, and employed fraud, false pretenses, false promises, misrepresentations, misleading statements, and deceptive practices in connection with the sale of their Baby Foods. Specifically, Defendants falsely represented that their Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

268. Defendants knew or should have known the Baby Foods did not have the quality described above because they contained or may contain Heavy Metals, perchlorate, and/or unnatural or other ingredients that do not conform to the packaging claims.

269. Defendants intended for Plaintiff McKeon and the Minnesota Subclass to rely on and accept as true these representations in deciding whether to purchase the Baby Foods.

270. Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers about the Baby Foods' quality, ingredients, fitness for consumption and, by extension, the true value of the Baby Foods. Plaintiff McKeon and the Minnesota Subclass relied on, and were in fact deceived by, Defendants' representations and omissions respect to the Baby Foods' quality, ingredients, and fitness for consumption in deciding to purchase them over competitors' baby foods.

271. The facts concealed or not disclosed by Defendants were material facts in that Plaintiff McKeon and any reasonable consumer would have considered them in deciding whether to purchase the Baby Foods. Had Plaintiff McKeon known the Baby Foods did not have the quality advertised by Defendants, she would not have purchased the Baby Foods.

272. Defendants' unlawful conduct is continuing, with no indication that they intend to cease this fraudulent course of conduct.

273. As a direct and proximate result of Defendants' conduct, Plaintiff McKeon and the Minnesota Subclass have suffered actual damages in that they purchased the Baby Foods that were worth less than the price they paid.

274. Plaintiff McKeon and the members of the Minnesota Subclass would not have purchased the Baby Foods at all had they known of the presence of these Heavy Metals, perchlorate, or other undesirable toxins or contaminants.

275. Pursuant to Minn. Stat. § 8.31, subd. 3a, and § 325F.69, Plaintiff McKeon and the Minnesota Subclass seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' violations of the MPCFA.

## COUNT XII

**(Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") on Behalf of Plaintiff Crawford and the Pennsylvania Subclass)**

276. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

277. Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. §§201-1 et seq. (the "UTPCPL") makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

278. Defendants are a manufacturer, marketer, seller, and distributor of the Baby Foods.

279. Defendants market and sell the Baby Foods with express warranties created on the products' packaging, labeling, advertisements, marketing literature, and website regarding the qualities, ingredients, and benefits of the Baby Foods.

280.    Plaintiff Crawford and the Pennsylvania Subclass purchased the Baby Foods for personal, household, or family use.

281.    Defendants misrepresented the quality of the Baby Foods and the ingredients contained therein on their labels in violation of the UTPCL.

282.    Defendants' deceptive, false and misleading statements deceived Plaintiff Crawford and the Pennsylvania Subclass and deceived a substantial segment of the target consumer audience in violation of the UTPCL.

283.    The conduct described above and throughout this Complaint took place within the Commonwealth of Pennsylvania and constitutes unfair methods of competition or unfair or deceptive acts or practices pursuant to §§201-2(4)(v), (vii), and (xxi) of the UTPCL.

284.    In violation of the UTPCPL, Defendants omitted and concealed material facts from Plaintiff Crawford and the Pennsylvania Subclass regarding the quality, characteristics, and benefits of the Baby Foods.

285.    The omissions and misrepresentations described herein were likely to deceive consumers into purchasing the Baby Foods.

286.    Defendants knew or reasonably should have known their representations about the Baby Foods were false, that the Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and otherwise were not as warranted and represented by Defendants.

287.    Defendants knew or should have known, at the time the Baby Foods left their control that they contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants, and were not made of ingredients fit for consumption by babies.

288.    Defendants' deception is material as they influenced purchasing and payment decisions.

289.    Plaintiff Crawford and the Pennsylvania Subclass have been damaged as a direct and proximate result of Defendants' deceptive and unfair practices.

290.    Defendants intended that Plaintiff Crawford and the Pennsylvania Subclass would rely on their presentations, as their reliance was crucial to Defendants being able to command a premium for the Baby Foods.

291.    Defendants deceived and continue to deceive consumers about the quality and ingredients of their Baby Foods as well as the fitness of these products for ingestion by infants. This conduct constitutes unfair or deceptive acts or practices within the meaning of the UTPCPL. This illegal conduct by Defendants is continuing, with no indication that it will cease.

292.    Defendants' actions in connection with the manufacture and distribution of the Baby Foods as set forth herein evidence a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the UTPCPL.

293.    Defendants acted willfully, knowingly, intentionally, unconscionably, and with reckless indifference when they committed these acts of consumer fraud.

294.    Defendants intended that Plaintiff Crawford and the Pennsylvania Subclass would rely on the acts of concealment, omissions and misrepresentations regarding the nature of the Baby Foods so that Plaintiff Crawford and the Pennsylvania Subclass members would purchase the Baby Foods.

295.    Plaintiff Crawford and the Pennsylvania Subclass relied on the acts of concealment, omissions, and misrepresentations regarding the nature of the Baby Foods.

296.    Plaintiff Crawford and the Pennsylvania Subclass, had Defendants disclosed to them all material information regarding the Baby Foods, would have considered the omitted information material to their decision to purchase the Baby Foods at the price they paid.

297.    As a direct proximate result of Defendants' misrepresentations and omissions, Plaintiff Crawford and the Pennsylvania Subclass suffered direct economic loss by purchasing the Baby Foods at a premium, and unwarranted, price. Had Plaintiff Crawford and the Pennsylvania Subclass known the Heavy Metals, perchlorate, or other undesirable toxins or contaminants content of the Baby Foods, they would not have bought them, or they would not have paid the premium price that they did.

CONSOLIDATED CLASS ACTION COMPLAINT

298. Plaintiff Crawford and Pennsylvania Subclass are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

299. Defendants' conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiff Crawford and the Pennsylvania Subclass to recover actual compensatory and statutory damages, as well as attorneys' fees and costs of suit, to the fullest extent.

**COUNT XIII**
**(Unjust Enrichment Against Defendants on Behalf of the Class or,**
**Alternatively, the State Subclasses)**

300. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

301. Substantial benefits have been conferred on Defendants by Plaintiffs and the Class through the purchase of the Baby Foods. Defendants knowingly and willingly accepted and enjoyed these benefits.

302. Defendants either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendants. As such, it would be inequitable for Defendants to retain the benefit of the payments under these circumstances.

303. Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits without payment of the value to Plaintiffs and the Class.

304. Plaintiffs and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

305. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

CONSOLIDATED CLASS ACTION COMPLAINT

**COUNT XIV**
**(Fraudulent Misrepresentation Against Defendants on Behalf of the Class or,
Alternatively, the State Subclasses)**

306.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

307.     Defendants falsely represented to Plaintiffs and the Class that their Baby Foods were healthy, nutritious, organic, made from the best ingredients, and safe for consumption.

308.     Defendants intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase their Baby Foods.

309.     Defendants knew their representations about the Baby Foods were false in that the Baby Foods contained or may contain, levels of Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements. Defendants allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

310.     Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment. Given the deceptive manner in which Defendants advertised, represented, and otherwise promoted the Baby Foods, Plaintiffs' and the Class's reliance on Defendants' misrepresentations was justifiable.

311.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known the Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

312.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT XV**
**(Fraud by Omission Against Defendants on Behalf of the Class or,
Alternatively, the State Subclasses)**

313.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

314.    Defendants concealed from and failed to disclose to Plaintiffs and the Class that their Baby Foods contained or may contain, Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

315.    Defendants were under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Baby Foods because: (1) Defendants were in a superior position to know the true state of facts about their products; (2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by infants; and (3) Defendants knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

316.    The facts concealed or not disclosed by Defendants to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

317.    Plaintiffs and the Class justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior when compared to how the Baby Foods are advertised and represented by Defendants.

318.    As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known Baby Foods contained or may contain Heavy Metals, perchlorate, or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

319.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against the Defendants as to each and every count, including:

A.     An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.     An order enjoining Defendants from selling the Baby Foods until the higher and/or unsafe levels of Heavy Metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.     An order enjoining Defendants from selling the Baby Foods in any manner suggesting or implying that they are healthy, nutritious, and safe for consumption;

D.     An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.     An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.     An order requiring Defendants to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.     An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.     An order requiring Defendants to pay punitive damages on any count so allowable;

J.     An order awarding attorneys' fees and costs to Plaintiffs and the Class; and

K.     An order providing for all other such equitable relief as may be just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 11, 2021

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
ROBERT K. SHELQUIST
REBECCA A. PETERSON

By: s/ Rebecca A. Peterson

100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rkshelquist@locklaw.com
rapeterson@locklaw.com

LITE DEPALMA GREENBERG, LLC
Joseph DePalma
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
scruzhodge@litedepalma.com

CUNEO GILBERT & LADUCA, LLP
Charles Laduca
Katherine Van Dyck
C. William Frick
4725 Wisconsin Avenue NW, Suite 200
Washington, DC 20016
Telephone:(202) 789-3960
Facsimile: (202) 789-1813
E-mail: charles@cuneolaw.com
kvandyck@cuneolaw.com

GUSTAFSON GLUEK PLLC
Daniel E. Gustafson
Amanda M. Williams
Raina C. Borrelli
Mary M. Nikolai
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
E-mail: dgustafson@gustafsongluek.com
        awilliams@gustafsongluek.com
        rborrelli@gustafsongluek.com
        mnikolai@gustafsongluek.com

GUSTAFSON GLUEK PLLC
Dennis Stewart (SBD 99152)
600 B Street
17th Floor
San Diego, CA 92101
Telephone: (619) 595-3299
E-mail: dstewart@gustafsongluek.com

WEXLER WALLACE, LLP
Kenneth A. Wexler
Kara A. Elgersma
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
E-mail: kaw@wexlerwallace.com
        kae@wexlerwallace.com

TAUS, CEBULASH & LANDAU, LLP
Kevin Landau
Miles Greaves
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (212) 931-0704
E-mail: klandau@tcllaw.com
        mgreaves@tcllaw.com

CONSOLIDATED CLASS ACTION COMPLAINT

SALTZ, MONGELUZZI, & BENDESKY, P.C.
Simon B. Paris
Patrick Howard
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3895
E-mail: sparis@smbb.com
          phoward@smbb.com

SAUDER SCHELKOPF
Matthew D. Schelkopf
Lori G. Kier
Davina C. Okonkwo
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
E-mail: mds@sstriallawyers.com
          lgk@sstriallawyers.com
          dco@sstriallawyers.com

*Attorneys for Plaintiffs*

CONSOLIDATED CLASS ACTION COMPLAINT